D/F
FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ FEB 29 2016 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
Yisroel M. Plaut,
                           Plaintiff,

    -against-

Focus Camera, LLC,
                           Defendant.
---------------------------------------------------------------- X

15-CV-4735 (ARR)(PK)

NOT FOR PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Plaintiff, Yisroel M. Plaut, brings this Family Medical Leave Act ("FMLA") claim against his former employer, Focus Camera, LLC ("Focus"). Defendant counterclaims, asserting that plaintiff acted as a "faithless servant" and breached his fiduciary duty to defendant in violation of New York state law. Plaintiff now moves to dismiss defendant's counterclaim arguing that the court lacks subject matter jurisdiction over it, and that, even if properly before the court, the counterclaim fails to state a claim. I agree that the court lacks jurisdiction over defendant's state law counterclaim, and therefore grant plaintiff's motion to dismiss.

## BACKGROUND

Plaintiff was employed by Focus from January 2013 to May 2015. Compl. ("Compl."), Dkt. #1, ¶¶ 9, 43-44. Plaintiff alleges that he suffered from multiple medical ailments throughout his employment, and that Focus took numerous adverse actions against him as a result of these medical problems. Id. ¶¶ 25, 27, 30, 33, 35, 36, 40. These adverse actions allegedly culminated in May 2015, when plaintiff was terminated from his position at Focus and told that he could return only when "[he would] be able to work in the office on a full-time basis, without the past uncertainties." Id. ¶ 43. As a result of his termination and the various other actions taken against

1

him, plaintiff now brings suit seeking lost income and benefits, liquidated damages, compensatory damages, and punitive damages under the FMLA and New York City Human Rights Law. Id. at 16. In addition, plaintiff seeks damages for alleged violations of the New York Wage Theft Prevention Act and New York State Labor Law, id., as well as interest, attorney's fees, and costs. Id.

In response to plaintiff's complaint, defendant asserted a counterclaim alleging that plaintiff has caused Focus to be sued by one of its clients. Am. Answer ("Answer"), Dkt. #10, at 6-7. Specifically, defendant alleges that plaintiff entered into an agreement on defendant's behalf with Adobe Systems, Inc. ("Adobe") to list certain Adobe software for sale. Id. at 6-7. Defendant also alleges, however, that this agreement restricted plaintiff to selling the Adobe software only in conjunction with certain other products. Id. Defendant alleges plaintiff, in disregard of this prohibition, "knowingly and intentionally" listed the software for sale without the designated products with which it was intended to be sold. Id. at 7. As a result of plaintiff's alleged wrongful conduct, Adobe sued defendant in the Northern District of California. Id. According to defendant, plaintiff's actions "increased his personal potential remuneration . . . but knowingly placed his employer in jeopardy." Id. On this basis, defendant alleges that plaintiff acted as a "faithless servant" in violation of his fiduciary obligation to defendant, and is therefore "indebted to Defendant for all costs incurred in defending [the Adobe lawsuit] and any damages that may result from said litigation." Id. at 7.

Plaintiff now seeks to dismiss defendant's counterclaim arguing both that the court lacks subject matter jurisdiction to hear it pursuant to Federal Rule of Civil Procedure 12(b)(1) and that the counterclaim fails to state a claim pursuant to Rule 12(b)(6).

2

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject-matter jurisdiction must prove "by a preponderance of the evidence that it exists." Id. When evaluating whether the party asserting that jurisdiction exists has met this burden, courts "borrow from the familiar Rule 12(b)(6) standard, construing the [jurisdictional allegations] in [] favor [of the party asserting them] and accepting as true all material factual allegations [advanced in support of jurisdiction]." Donoghue v. Bulldog Inv'rs Gen. P'ship, 696 F.3d 170, 173 (2d Cir. 2012).

## DISCUSSION

Federal district courts are courts "of limited jurisdiction" that "possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Congress has granted federal district courts original jurisdiction over two types of cases. First, federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Second, federal courts have original jurisdiction over civil actions between citizens of different States, between U.S. citizens and foreign citizens, and brought by foreign states against U.S. citizens, so long as the "matter in controversy exceeds the sum or value of $75,000." See 28 U.S.C. § 1332(a)(1)-(4).

It is similarly well established, however, that in certain cases "once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). While supplemental jurisdiction arose as a judge-made doctrine, Congress has codified federal courts' power to exercise jurisdiction over state law

claims that are related to claims over which federal courts have original jurisdiction. See 28 U.S.C. § 1367. In this case, the court has original jurisdiction over plaintiff's FMLA claim, as it arises under federal law. In order to hear defendant's state law counterclaim, however, the court would have to exercise its supplemental jurisdiction pursuant to § 1367.

Under § 1367(a), when federal district courts have original jurisdiction over a civil action the courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Thus, in order for this court to have jurisdiction over defendant's state law counterclaim, defendant must establish that it arises from the "same case or controversy" as plaintiff's FMLA claim.

### A. Whether Defendant's Counterclaim Satisfies the "Same Case or Controversy" Requirement of § 1367(a)

When evaluating if a state law claim forms part of the same case or controversy as a federal claim, courts look to whether the state and federal claim "derive from a common nucleus of operative fact." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004) (quoting Cicio v. Does, 321 F.3d 83, 97 (2d Cir. 2003)). Defendant's counterclaim cannot meet this standard. A plethora of authority has concluded that an employment relationship between the parties alone does not establish the "common nucleus of operative facts" necessary to create supplemental jurisdiction. See, e.g., Lyon v. Whisman, 45 F.3d 758, 763 (3d Cir. 1995) (agreeing with district courts that have "resisted expanding supplemental jurisdiction based merely on an employment contract"); Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008) (holding that defendant did not "make a showing sufficient to ground its counterclaims within the Court's supplemental jurisdiction" under § 1367(a) where the only relationship between plaintiff's claim and defendant's counterclaim was an employment

4

relationship); cf. Nicholsen v. Feeding Tree Style, Inc., No. 12-CV-6236, 2014 WL 476355, at *4 (S.D.N.Y. Feb. 6, 2014) (holding that supplemental jurisdiction was appropriate because, in contrast to cases like Torres where "the plaintiff's alleged misconduct was completely irrelevant to his FLSA claim," plaintiff's claim and defendant's counterclaim would involve resolving the same factual disputes.)

Finding such authority persuasive, I conclude that the employment relationship between the parties in this case is insufficient to create federal jurisdiction over the counterclaim. The critical facts of plaintiff's claim against Focus under the FMLA are entirely unrelated to Focus's proposed counterclaim that plaintiff was a faithless servant by violating Focus's contract with Adobe. The only connection between the two claims is that they both relate to plaintiff's employment at Focus. Absent any additional factual nexus, I agree with the courts that have found that this relationship alone does not create the "common nucleus of operative facts" § 1367(a) requires.

Focus cites to Markbreiter v. Barry L. Feinberg, M.D., P.C., No. 09-CV-5573, 2010 WL 334887 (S.D.N.Y. Jan. 29, 2010), in support of its argument that its counterclaim satisfies § 1367(a).[1] In Markbreiter, a physician was sued by his former secretary who alleged that she was owed overtime wages under the Fair Labor Standards Act ("FLSA"). Id. at *1. The physician counterclaimed, arguing that during some of the hours the secretary was alleging she should have been paid overtime she was acting as a "faithless servant" by re-directing patients to other

---

[1] More specifically, defendant cites to Markbreiter for the proposition that its counterclaim is compulsory. Federal Rule of Civil Procedure 13 defines a compulsory counterclaim as any claim that the pleader has against an opposing party that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." As any claim that meets this definition of arising out of the same transaction or occurrence as another claim would also form part of the "same case or controversy" as that claim under § 1367(a), it is the supplemental jurisdiction statute, not the federal rule regarding compulsory counterclaims, that dictates the jurisdictional analysis in this case. If defendant's counterclaim were in fact compulsory, it would also satisfy the requirements of § 1367(a).

5

physicians. Id. The court found that jurisdiction was appropriate because both claims concerned the legality of compensation for the same hours worked. Id. at *1-2. In other words, the two claims formed the same case or controversy because if the physician prevailed on his "faithless servant claim" for the hours in question, the secretary would not be entitled to relief under the FLSA for those same hours. Id.

Unlike Markbreiter, this is not a case where the defendant's counterclaim asserts that plaintiff is not entitled to the remedy he seeks because he was acting as a "faithless servant." Focus's answer does not allege that plaintiff is not entitled to lost income because he was acting as a "faithless servant" at the time he allegedly should have been paid under the FMLA, or that it was proper for Focus to take the alleged adverse actions against plaintiff due to his "faithless" behavior. Rather, Focus asserts that it is entitled to reimbursement of its litigation costs and indemnification for any damages that plaintiff's alleged improper actions cause it to incur. See Answer at 7. Focus's claim for litigation costs and indemnification in a separate pending lawsuit with a third party is not "part of the same case or controversy" as plaintiff's claim that Focus violated the FMLA by taking improper actions against him as a result of his medical conditions.

### B. Whether Defendant Should be Granted Leave to Amend its Answer

While many circumstances may warrant allowing defendant to amend its answer to reflect whether it asserts that plaintiff was acting as a "faithless servant" during a period for which he is now claiming FMLA damages, a grant of leave to re-plead is not appropriate in this case. After the parties submitted letters requesting a pre-motion conference in connection with the pending motion, my grant to defendant of leave to amend was specifically conditioned on the understanding that "defendant's answer pleads its best and final counterclaim." See Notice dated

Oct. 9, 2015 (emphasis added). Defendant filed is amended answer on October 16, 2015, knowing that I would assess the sufficiency of that pleading without further amendments.

Moreover, defendant cannot argue that it did not have access to information necessary to amend its pleading at the time that it filed its amended answer. In its letter requesting a pre-motion conference filed a week prior to its amended answer, defendant explicitly stated: "[d]efendant must be able to interpose an affirmative defense of discharge being premised upon poor performance, which put the company in jeopardy, causing it to be sued." See Letter from Richard M. Howard dated Oct. 7, 2015, Dkt. #9, at 2. Yet, defendant's amended answer does not reflect a defense of discharge based on poor performance nor does it assert a claim that defendant is entitled to wages plaintiff received during the time he was acting as a faithless servant. Instead, defendant's amended answer asserts only a claim for indemnification in the California litigation with Adobe and litigation costs arising from that suit.[2] See Answer at 7.

Lastly, even if defendant could amend its counterclaim to allege some overlap between the time frame for which plaintiff claims he is entitled to FMLA damages and his "faithless" behavior, granting leave to amend would still not be appropriate. Section 1367(c) contains exceptions that allow a federal court to decline to exercise jurisdiction over a state law claim, even when that state law claim forms part of the "same case or controversy" as a federal claim. As discussed below, one of these exceptions is applicable to this case, making leave to amend futile.

---

[2] As defendant's claim seeks no more than affirmative relief from plaintiff, it is apparent that this claim is only a counterclaim despite being mislabeled as an "affirmative defense and counterclaim." In its brief, Focus alludes to the argument that plaintiff's misconduct must be adjudicated as part of this case because it could serve as an affirmative defense—specifically that, even if Focus did violate the FMLA by discharging plaintiff, it could have discharged him in any event due to his misconduct. See Def.'s Mem. of law in Opp'n to Pl.'s Mot. to Dismiss ("Def.'s Br."), Dkt. #13-2, at 8 ("[t]he question is whether Focus had ample grounds for his alleged discharge"). As discussed above, defendant did not assert this defense in its amended answer despite being given ample opportunity to do so. Thus, the court will treat defendant's "Eighteenth Affirmative Defense and First Counterclaim" only as a counterclaim.

7

## C. Whether Defendant's Counterclaim Falls Under Any of the § 1367(c) Exceptions

Section 1367(c) provides that federal courts "may decline to exercise supplemental jurisdiction over a claim" that meets the requirements of § 1367(a) if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) [there are] exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4). When considering whether any of these exceptions apply, the court's discretionary analysis must be "informed by whether remanding the pendent state claims comports with the underlying objective of most sensibly accommodat[ing] the values of economy, convenience, fairness, and comity." Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 446 (2d Cir. 1998) (quoting Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of California, 24 F.3d 1545, 1556 (9th Cir. 1994)) (international quotation marks omitted). These values of "economy, convenience, fairness, and comity" have commonly been referred to as the Gibbs factors after United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966), which provided the standard for federal courts to apply when exercising supplemental jurisdiction prior to the enactment of § 1367.

The exceptions enumerated in § 1367(c)(1)-(3) are inapplicable to this case. The "faithless servant doctrine" is not a novel or complex issue of state law, there is no evidence that the state claim would "predominate" over the federal claim, and the district court has not dismissed the claims over which it has original jurisdiction. Section 1367(c)(4), however, prevents the court from exercising jurisdiction over defendant's counterclaim. When applying § 1367(c)(4), the court must "articulate why the circumstances of the case are exceptional in

8

addition to inquiring whether the balance of the Gibbs values provide compelling reasons for declining jurisdiction in such circumstances." Itar-Tass Russian News Agency, 140 F.3d at 446 (quoting Exec. Software N. Am., Inc., 24 F.3d at 1557)).

The circumstances in this case are exceptional because plaintiff cannot be found liable to Focus on its counterclaim unless it is determined that Focus is liable to Adobe in the pending suit in the Northern District of California. Because the identical issue of Focus's liability to Adobe would be required to be litigated in both suits, exercising jurisdiction over plaintiff's liability to Focus in this court could lead to inconsistent results. Such potentially conflicting results constitute exceptional circumstances which, when coupled with the Gibbs factors weighing against exercising jurisdiction, warrant the court's invocation of § 1367(c)(4). See Kleiman v. O'Neill, No. 03-CV-3829, 2008 WL 5582453, at *3 (E.D.N.Y. Dec. 30, 2008) (declining to exercise jurisdiction under § 1367(c)(4) in light of an ongoing, parallel state criminal investigation); Philip Morris Inc. v. Heinrich, No. 95-CV-0328, 1998 WL 122714, at *2 (S.D.N.Y. Mar. 19, 1998) (declining to exercise jurisdiction under § 1367(c)(4) when action addressing the same claims was pending in state court and noting concerns about "duplication of evidence" and "inconsistent results from identical or similar evidence" were federal case to proceed).

With regard to the Gibbs factors, hearing these factually disparate cases together would effectively require the court to conduct two separate trials of wholly unrelated issues in a single proceeding. As plaintiff points out, no third-party witnesses would be needed to testify regarding his FMLA claim, but third-party witnesses entirely unrelated to the FMLA claim would likely have to testify regarding any business dealings he had with Adobe. Pl.'s Mot. to Dismiss ("Pl.'s Br."), Dkt. #13-1, at 9. The involvement of third parties would also greatly complicate discovery

as, in addition to conducting discovery of each other, the parties would have to conduct discovery with California-based Adobe and any of its employees who were involved in the alleged transactions with plaintiff and Focus. Further, defendant's reply brief wholly fails to address plaintiff's assertion that "[c]omplicated protective orders may also be required, because of the intellectual property rights involved in the Adobe software products." Id. These pragmatic concerns "would create logistical imbroglios that are the very antithesis of the values of 'economy, convenience, fairness, and comity' sought to be advanced by supplemental jurisdiction." Prudential Equity Grp., LLC v. Ajamie, 524 F. Supp. 2d 473, 476 (S.D.N.Y. 2007) (quoting Jones v. Ford Motor Credit Co., 358 F.3d 205, 214 (2d Cir. 2004)).

Lastly, the court finds that any concerns about fairness to the defendant are largely mitigated by the fact that this motion was brought early in the litigation and that the defendant has at least one additional forum in which to bring its claim. Focus is free to file a faithless servant claim in New York state court, and may also try to implead plaintiff into its ongoing lawsuit with Adobe in the Northern District of California.[3]

Thus, the court finds both that the circumstances in this case are "exceptional" under § 1367(c)(4) and that the Gibbs factors support declining to exercise jurisdiction over defendant's counterclaim. Accordingly, even if defendant's counterclaim could satisfy the "same case or controversy" requirement of § 1367(a), the court would still decline to exercise supplemental jurisdiction pursuant to § 1367(c)(4).

### D. Whether There is a Setoff Exception to § 1367

Lastly, Focus cites to case law from the Middle District of Florida for the proposition that its counterclaim may proceed as a setoff even if the court could not otherwise exercise

---

[3] The court does not have sufficient information to evaluate whether the Northern District of California would have personal jurisdiction over plaintiff.

supplemental jurisdiction. See Def.'s Br. at 9. As mentioned above, prior to the enactment of § 1367, the federal courts followed the framework set forth in United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966), when evaluating whether it was appropriate to exercise supplemental jurisdiction. Many courts, including the Second Circuit, allowed a setoff exception to supplemental jurisdiction if "the [] counterclaim is in the nature of a set-off interposed merely to defeat or reduce the opposing party's claim and does not seek affirmative relief." U. S. for Use & Benefit of D'Agostino Excavators, Inc. v. Heyward-Robinson Co., 430 F.2d 1077, 1081 n.1 (2d Cir. 1970). The Third Circuit, however, declined to follow this setoff exception. That court reasoned that such an exception was inconsistent with the Supreme Court's holding in Gibbs, as the exception would allow "all defensive set-offs, whether or not they satisfy the Gibbs test, [to be] within the [supplemental] jurisdiction of the court." Ambromovage v. United Mine Workers of Am., 726 F.2d 972, 990 n.56 (3d Cir. 1984).

More recently, the Second Circuit has also cast doubt on its previous ruling on the existence of a setoff exception, agreeing with the Third Circuit that "the 'defensive set-off exception does not fit squarely within the analytic framework set forth' in [Gibbs]." Jones, 358 F.3d at 211 n.3 (quoting Ambromovage, 726 F.2d at 990 n.56). Following Jones, multiple district courts in this circuit have declined to follow the setoff exception in cases where supplemental jurisdiction would not otherwise be appropriate. See LaChapelle v. Torres, 37 F. Supp. 3d 672, 681-82 (S.D.N.Y. 2014) ("Plaintiffs' reasoning rests on the assumption that the setoff exception they describe accurately represents the scope of the Court's supplemental jurisdiction. It does not."); Prudential Equity Grp, 524 F. Supp. 2d at 476 (noting that the Second Circuit has questioned the validity of the exception and finding there to be "uncertainties over the nature and extent of the exception"); Pro Bono Invs., Inc. v. Gerry, No. 03-CV-4347, 2005 WL 2429787, at

*13 (S.D.N.Y. Sept. 30, 2005) ("[i]f merely requesting a setoff of potential liability on the original claims is sufficient to bring a claim within Section 1367(a), a counter-plaintiff could plead such an affirmative defense in every case and thereby render meaningless Section 1367(a)'s limitation of supplemental jurisdiction . . .").

I agree with the reasoning of the district courts in this circuit that have declined to adopt the setoff exception. To follow the setoff exception would cast aside all of the concerns of judicial economy that supplemental jurisdiction was meant to serve. Moreover, I find persuasive the reasoning of those courts that have found that the enactment of § 1367 implicitly eliminates the existence of the setoff exception. By its terms, § 1367(a) explicitly limits supplemental jurisdiction to claims that arise out of "the same case or controversy." Were the setoff exception viable, any claim by a defendant that its adversary owes it money, no matter how dissimilar from the plaintiff's original claim, would justify federal court jurisdiction as long as any of the claims raised in the complaint are brought under federal law. Such a result would effectively disregard Congress's command that supplemental jurisdiction be determined based on the similarity of the claims in question, not just the similarity of the parties.

### E. Plaintiff's Motion to Dismiss for Failure to State a Claim

Because the court grants plaintiff's motion to dismiss Focus's counterclaim for lack of subject matter jurisdiction, the court lacks jurisdiction to decide plaintiff's motion to dismiss for failure to state a claim.

### CONCLUSION

For the reasons set forth above, the court grants plaintiff's motion to dismiss defendant's "Eighteenth Affirmative Defense and First Counterclaim" pursuant to Federal Rule of Civil Procedure 12(b)(1). The case is referred to the Honorable Peggy Kuo for pretrial supervision.

SO ORDERED.

/s/(ARR)
_____
Allyne R. Ross
United States District Judge

Dated: February 26, 2016
Brooklyn, New York